IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WALTER GARTH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08 C 5870 |
| | ) | |
| CITY OF CHICAGO and LIEUTENANT BERTI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Walter Garth has sued the City of Chicago and Chicago police Lieutenant Berti under 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments, and he has also asserted state law claims against them. The City and Berti have moved to dismiss Garth's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Background

The Court takes the facts as they are alleged in Garth's complaint. On May 1, 2008, Garth, an African-American man who is employed as a Chicago police officer, dropped his son off at a school in Chicago while lawfully operating his motorcycle. Garth was attired in motorcycle riding clothing; he says it was readily apparent that he is

1

African-American. Berti, a white male, was sitting in an unmarked police car and watched Garth drop his son off at school. Berti also noticed Garth's motorcycle attire and race.

As Garth drove away, Berti activated the emergency equipment in his vehicle and instructed Garth to stop the motorcycle and pull over to the side of the road. Garth pulled over to the side of the road and stopped his motorcycle but then noticed that Berti was continuing to drive his police car toward the rear of the motorcycle. Garth became concerned that Berti's car was going to strike his motorcycle and cause him serious harm, so he pulled away. Berti continued to follow Garth and, Garth says, made additional attempts to tip the motorcycle by driving the police car into the rear of the motorcycle. Each of Berti's attempts placed Garth in apprehension of receiving a battery.

Berti later learned that Garth was a Chicago police officer and prepared a police report asserting that Garth unlawfully attempted to flee or elude a police officer. Pursuant to the report, under the Chicago Municipal Code, Garth's vehicle became eligible for impoundment, and Garth received a notice to that effect. Garth contested the notice, and the City's Department of Administrative Hearings conducted a hearing on September 9, 2008.

According to the Code, "to disprove the vehicle's eligibility for impoundment, the owner of record must prove that (1) at the time and date of the attempted stop . . . the described vehicle was not operated within the City of Chicago; or (2) at the time and date of the attempted stop, the vehicle was reported stolen; (3) the license information

described in the report does not match the listed make of the described vehicle." Chicago Mun. Code § 9-92-035(e). Garth was unable to prove any of these things, and the administrative law officer found that Garth's motorcycle was "eligible for impoundment if found on the public way within 12 months" after September 9, 2008. This enabled any Chicago police officer to seize Garth's motorcycle within the specified time frame. To date, the vehicle has not been seized and remains in Garth's possession.

## Discussion

When considering a motion to dismiss a complaint, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss under Rule 12(b)(6), the complaint must include enough facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Bissessur v. Ind. Univ. Bd. of Trs.*, No. 08-3504, 2009 WL 2902076, at *2 (7th Cir. Sept. 11, 2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "This said, in examining the facts and matching them up with the stated legal claims, [a court] give[s] 'the plaintiff the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bissessur*, 2009 WL 2902076, at *2 (quoting *Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)).

3

## A. Section 1983 Claims against Berti

### 1. Fourth Amendment claim

Garth alleges that Berti seized him within the meaning of the Fourth Amendment because Garth complied with Berti's order to stop. Berti contends that the Court should dismiss the claim because Garth drove away and never complied with the order.

The Fourth Amendment protects against "unreasonable . . . seizures includ[ing] seizure of the person." *California v. Hodari D.*, 499 U.S. 621, 624 (1991) (internal quotation marks omitted). Whether a seizure occurred depends on "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

A seizure occurs when a reasonable person believes he is not free to leave and when, in the absence of physical force, he "*submi[ts]* to the assertion of authority." *Hodari D.*, 499 U.S. at 626, 628 (emphasis in original); *see also Brendlin v. California*, 511 U.S. 249, 254 (2007) ("there is no seizure without actual submission."); *Tom v. Voida*, 963 F.2d 952, 957 (7th Cir. 1992) ("A seizure requires not only that a reasonable person feel unfree to leave, but also that the subject actually yield to a show of authority from the police"). Thus, "only when the officer . . . has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). Although Garth correctly asserts that a normal traffic stop is a constitutionally protected seizure, *Delaware v. Prouse,* 440 U.S. 648, 653 (1979), "[a]ttempted seizures of a person are beyond the scope of the Fourth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 n. 7 (1998); *see also Hodari D.*, 499

4

U.S. at 626 n. 2 ("[N]either usage nor common-law tradition makes an *attempted* seizure a seizure.") (emphasis in original).

Garth alleges that Berti activated the emergency equipment on his unmarked police car, indicating to Garth that he should stop the motorcycle. Garth alleges he complied and pulled over. But when Berti continued moving his vehicle towards the motorcycle, Garth says, he drove away to avoid being struck. In short, Garth concedes in his complaint that he stopped only briefly and then drove away.

Garth argues that he submitted to police authority by stopping and waiting for Berti to exit his vehicle. The passenger in *United States v. Morgan*, 936 F.2d 1561 (10th Cir. 1991), and the drivers in *United States v. Baldwin*, 496 F.3d 215 (2nd Cir. 2007), and *United States v. Washington*, 12 F.3d 1128 (D.C. Cir. 1994), made a similar argument. In all three cases, the subjects pulled over and stopped in response to the activation of a police car's overhead lights and siren. The passenger in *Morgan* got out of the vehicle, and a police officer asked him to "hold up." *Morgan*, 936 F.2d at 1565. The passenger replied, "What do you want?" and then fled by foot. *Id*. In *Baldwin* and *Washington*, as the police officer approached the vehicles, the driver drove off, and a chase ensued.

The Tenth Circuit in *Morgan* found that the driver was seized for purposes of the Fourth Amendment because he momentarily yielded to the police officer's show of authority. But that determination was unnecessary to the decision in the case. The defendant in *Morgan* challenged the legality of the stop and his ensuing arrest. Though

5

the court concluded that the defendant's momentary pause constituted a seizure, its primary holding was that the seizure was justified. *Morgan*, 936 F.2d at 1567-69.

In *Baldwin*, the Second Circuit declined to adopt the reasoning in *Morgan* and instead held that "to comply with an order to stop–and thus to become seized–a suspect must do more than halt temporarily . . . ." *Baldwin*, 496 F.3d at 218. Similarly, in *Washington*, the court found that the driver's initial stop did not amount to a seizure because he drove away and did not submit the police officer's order. *Washington*, 12 F.3d at 1132.

The Court finds *Baldwin* and *Washington* more persuasive than *Morgan*. As the court stated in *Baldwin*, "it is the nature of the interaction, and not its length, that matters." *Baldwin*, 496 F.3d at 219. Because the driver in *Baldwin* drove away as the police officer approached his car, his "conduct, all circumstances considered, amounted to evasion of police authority, not submission." *Id*. Although Garth alleges that he stopped momentarily, he then drove away when Berti's car approached. As in *Baldwin*, Garth evaded Berti and did not submit to his authority. *Id*. At most, Berti attempted to seize Garth. Attempted seizures, however, do not implicate the Fourth Amendment. *Lewis*, 523 U.S. at 845 n. 7.

The facts in this case are different from those in *Baldwin* and *Washington* in that the police officers in those cases exited their vehicles, whereas Berti continued driving towards Garth's motorcycle and never stopped. Garth essentially claims that he would have stopped but for the fact that Berti kept driving toward him. But whether a seizure occurred, however, does not depend on one's subjective willingness to submit to

authority. Rather, the question is whether one actually submitted to police authority. *Brendlin*, 511 U.S. at 254. Because Garth drove away and did not submit to Berti's authority, he was not seized. For this reason, the Court dismisses Garth's Fourth Amendment claim.

### 2. Due Process claim

Garth claims that Berti violated his substantive due process rights by physically threatening him with his police car. Garth alleges that after he pulled over to the side of the street, Berti continued driving his police car toward Garth's motorcycle. Garth says he felt physically threatened. He claims that he drove away out of fear, and that Berti followed him and kept trying to strike his motorcycle. Taking Garth's allegations as true and drawing reasonable inferences in his favor, as the Court is required to do at this stage of the case, Garth is contending that from the time of the momentary stop, Berti was deliberately trying to harm him.

The Supreme Court has made it clear that "the Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *Lewis*, 523 U.S. at 846 (internal quotation marks omitted). Only government action that shocks the conscience is unconstitutional as a violation of substantive due process. "The threshold question is whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. As the Supreme Court stated in *Lewis*, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849.

7

The government has a legitimate interest in a police officer's pursuit of a motorist who, for unexplained reasons, flees from a traffic stop. *Steen v. Myers*, 486 F.3d 1017, 1023 (7th Cir. 2007). Garth's claims are, however, distinguishable from the ordinary police pursuit case–at least based on the allegations he has made. He alleges that from the outset and even before the chase, Berti was trying to harm him for no legitimate reason. This makes Garth's claim actionable. *See Lewis*, 523 U.S. at 854 n.13 ("'It is a different story when a citizen . . . is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle.'") (quoting *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986)) (emphasis in original). As the Seventh Circuit indicated in *Steen*, by quoting *Checki* with approval, "'where a police officer uses a police vehicle to terrorize a civilian, and has done so with malicious abuse of official power shocking the conscience, a court may conclude that the officer[ ] [has] crossed the constitutional line.'" *Steen*, 486 F.3d at 1024 (quoting *Checki*, 785 F.2d at 538).

Though it is true, as Berti points out, that Garth does not contend that Berti actually struck his motorcycle, "there is no valid reason for insisting on physical injury before a section 1983 claim can be stated in th[e] context" of a person forced to "flee a terrorizing police officer." *Checki*, 785 F.2d at 538. Because that is precisely what Garth alleges in this case, he has stated a claim for violation of his due process rights.

### 3. Equal Protection claim

Garth alleges that he is African-American and was lawfully driving his motorcycle and that Berti treated him differently from other law-abiding motorists by pulling him over. Compl. ¶¶ 2, 5 & 8. He also alleges that Berti attempted to stop him "because he

8

is African American." *Id.* ¶ 10. Berti contends that Garth has failed to state an equal protection claim.

To prove a violation of the Equal Protection Clause, a plaintiff must establish that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272-74 (1979). In *Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005), the Seventh Circuit stated that "an allegation as simple as 'I was turned down [for] a job because of my race . . . sufficiently [pleads] race discrimination in violation of the Equal Protection Clause." *Id.* at 916 n.1.

Berti argues that in light of the Supreme Court's recent pronouncements regarding adequacy of pleading under Rule 8, Garth's allegations are "'naked assertion[s]' devoid of 'further factual development,'" *Iqbal*, 129 S. Ct. at 1949, and thus fail to state a claim. Berti argues that unless Garth alleges that Berti "did or said [some]thing to indicate that his decision to stop Garth was motivated by race" or that Berti "has declined to stop white motorists who are otherwise similarly situated to Garth," he cannot state a claim. Defs.' Mot. to Dismiss at 10-11. Intentional race discrimination, however, is not confined to those who openly communicate a racial motivation. Nothing in Rule 8 or the Supreme Court's recent pleading jurisprudence requires a plaintiff in Garth's situation to conduct a pre-lawsuit search of police records to determine if Berti engages in racial profiling–a search that likely would be impossible for Garth to conduct in any event. Although *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), require a plaintiff's claim to be plausible on its face, they do not

9

"require heightened fact pleading of specifics." *Twombly*, 550 U.S. at 570. The Court concludes that Berti has stated an equal protection claim. *Accord, Thompson v. Williams*, No. 08 C 6444, 2009 WL 1766774, at *4 (N.D. Ill. June 22, 2009) (denying motion to dismiss because plaintiff alleged disparate impact and discriminatory intent).

Berti also argues that Garth has no standing to sue because he has not suffered an actual or threatened injury. The Court disagrees. Though the stop may have been momentary, that affects only the extent of the injury, not its existence. It also set up an alleged chain of events that Garth alleges put him in fear of his life.

**B.    Section 1983 claim against the City**

Garth contends that the City's ordinance that allows the Department of Administrative Hearings to issue impoundment orders authorizing any Chicago police officer to seize a vehicle violates the Fourth Amendment. *See* Pl's Mem. in Opp. to Mot. to Dismiss at 11-12 (characterizing this as a Fourth Amendment claim). Garth alleges that such an order amounts to a warrant and that its issuance is unconstitutional because it is not issued by a neutral and disinterested magistrate.

Garth's claim against the City fails as a matter of law because "[a] *res* . . . [is] not seized until tak[en] into custody." *Hodari D.*, 499 U.S. at 624 (internal quotation marks omitted). Garth maintained possession of his motorcycle at all relevant times throughout the one-year period that he says the impoundment order was effective (i.e., through September 9, 2009). He cites no authority for the proposition that the mere *possibility* of a seizure implicates the Fourth Amendment.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss in part [docket no. 35]. Plaintiff's Fourth Amendment claims based on the alleged stop and on the impoundment order are dismissed. Defendants' motion is otherwise denied. The Court notes that defendants have made no argument that any of plaintiff's state law claims fail to state a claim. Defendants are directed to answer all remaining claims by October 16, 2009. Rule 26(a)(1) disclosures are to be made by October 23, 2009. The case is set for a status hearing on November 4, 2009 at 9:30 a.m. for the purpose of setting a discovery schedule.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 2, 2009